

FILED

2022 Mar-04  AM 11:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| **JUSTAN FLEMING, BREANNA MCGUIRE, MARLENE FLEMING, and PATSY MOON, individually and on behalf of a class of persons similarly situated,** | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **CASE NO:** |
| **v.** | ) ) | |
| **3M COMPANY, (f/k/a Minnesota Mining and Manufacturing Company); 3M COMPANY, INC., 3M COMPANY GUIN INDUSTRIAL LANDFILL; CITY OF GUIN WATER WORKS & SEWER BOARD; BEN HIGHTOWER CONSTRUCTION COMPANY; and BENJAMIN M. HIGHTOWER,** | ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

## INDIVIDUAL AND CLASS ACTION COMPLAINT

Pursuant to the provisions of Rule 23, <u>Fed. R. Civ. Pro.</u>, Plaintiffs JUSTAN FLEMING, BREANNA MCGUIRE, MARLENE FLEMING, and PATSY MOON, bring this Complaint on behalf of themselves, and on behalf of a Class of other people similarly situated. The Representative Plaintiffs bring this action against Defendants 3M Company, Incorporated, 3M Company Guin Industrial Landfill, Ben Hightower Construction Company, and Benjamin M. Hightower. The Representative Plaintiffs set forth and show unto the Court as follows:

1

## PRELIMINARY STATEMENT

1.     This Class Action Complaint is brought by property owners and other consumers of the water supplied by The City of Guin, Alabama, Water Works & Sewer Board. Representative Class Plaintiffs and Putative Class Members have been harmed by the disposal of solid waste and discharge of wastewater containing perfluorochemicals (PFAS) in Marion County, Alabama, by 3M Company, Inc., which causes pollution of ground and surface waters.

2.     Defendant City of Guin, Alabama Water Works and Sewer Board provides drinking water to residents in and around Guin, Marion County, Alabama. The water provided to ratepayers and other consumers by The Board is known to be contaminated by PFAS discharged by Defendant 3M Company from its manufacturing process in Guin, Marion County, Alabama.

3.     Defendants Hightower Construction Company and Benjamin M. Hightower are engaged in the business of transporting hazardous waste from the 3M Company facility to the 3M Guin Industrial Landfill and disposing of the waste thereat.

4.     A prior legal action with substantial identity of the parties-defendant and claims, was filed by The Guin Water Works and Sewer Board in The Circuit Court of Marion County, Alabama, on September 8, 2020: CITY OF GUIN WATER WORKS & SEWER BOARD v. 3M COMPANY, INC. ET AL., Civil Action No.

2

CV-2020-900082 (See, Exhibit "A"). This case was dismissed (with leave to re-file) upon the execution of a settlement agreement executed by and between the parties. The Representative Plaintiffs were not parties to this state court action (See, Exhibits "B" and "C").

5.      Neither a copy of this settlement agreement, nor the terms and conditions thereof, have been provided to ratepayers and customers of The Guin Water Works and Sewer Board. Indeed, the settlement agreement and the terms thereof have been kept secret from the public, in violation of state law.

6.      Upon information and belief, the Representative Plaintiffs allege, in good faith, and therefore do believe, that the state court case was settled for a sum in excess of twenty million dollars ($20,000,000), and that no provision was made for compensation of ratepayers and other consumers who have been harmed by the ingestion and other use of contaminated water provided by The Guin Water Works and Sewer Board.

## JURISDICTION AND VENUE

7.      This HONORABLE COURT has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this is a civil matter arising under the Constitution, laws, or treaties of the United States, and pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), because Plaintiffs are citizens of the State of Alabama and two (2) of the named Defendants are citizens of different states, and

the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and cost.

8.      In addition, thereto, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), which grants federal subject matter jurisdiction over any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a Class Action in which any Member of a Class of Plaintiffs is a citizen of a State different from any Defendant. The proposed Class is greater than 1,000 persons, Plaintiffs are residents of the State of Alabama, and two (2) of the named Defendants, 3M Company and 3M Company, Inc., are residents of different states.

9.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 (b)(2) in that all or substantially all of the events, acts, and omissions giving rise to the Plaintiffs' claims occurred in Guin, Marion County, Alabama, in the Northern District of Alabama.

## STATEMENT OF THE PARTIES

10.      Representative Plaintiff Justan Fleming is a resident of Marion County, Alabama, and he resides at and owns property located at 9110 County Road 42, Guin, Alabama 35563. Said Plaintiff is a ratepayer of The Guin Water Works and Sewer Board (GWWSB) and uses water from that utility for drinking and other domestic purposes. Plaintiff's water supply has been contaminated with PFAS and

4

related chemicals released from Defendant 3M Company's manufacturing processes and waste disposal operations located in Guin, Marion County, Alabama, which have migrated to his water supply. As a result, thereof he has suffered injury and damages to his health and to his property.

11.     Representative Plaintiff Breanna McGuire is an individual over 19 years of age who is a resident of Marion County, Alabama. She resides at and owns property located at 211 13th Avenue, Guin, Alabama 35563. Said Plaintiff is a ratepayer and consumer of The Guin Water Works and Sewer Board (GWWSB) and uses water from that utility for drinking and other domestic purposes. Plaintiff's water supply has been contaminated with PFAS and related chemicals released from Defendant 3M Company's manufacturing processes and waste disposal operations located in Guin, Marion County, Alabama, which have migrated to her water supply. As a result thereof she has suffered injury and damage to her health and to her property.

12.     Representative Plaintiff Darlene Fleming is an individual over 19 years of age who is a resident of Marion County, Alabama. She resides at and owns property located at 221 Highway 107 South, Guin, Alabama 35563. Said Plaintiff is a ratepayer and consumer of The Guin Water Works and Sewer Board (GWWSB) and uses water from that utility for drinking and other domestic purposes. Plaintiff's water supply has been contaminated with PFAS and related chemicals released from

Defendant 3M Company's manufacturing processes and waste disposal operations located in Guin, Marion County, Alabama, which have migrated to her water supply. As a result thereof she has suffered injury and damage to her health and to her property.

13.    Representative Plaintiff Patsy Moon is a resident of Marion County, Alabama, and she resides at and owns property located at 417 Highway 278, Guin, Alabama 35563. Said Plaintiff is a ratepayer of The Guin Water Works and Sewer Board (GWWSB) and uses water from that utility for drinking and other domestic purposes. Plaintiff's water supply has been contaminated with PFAS and related chemicals released from Defendant 3M Company's manufacturing processes and waste disposal operations located in Guin, Marion County, Alabama, which have migrated to her water supply. As a result, thereof she has suffered injury and damage to her health and to her property.

14.    Defendant 3M Company, (hereinafter referred to as "3M Company") is a foreign corporation organized and existing under the laws of the State of Delaware. It was formally known as Minnesota Mining and Manufacturing Co. It has qualified to do business in the State of Alabama and it is actively doing business in the State of Alabama through the manufacture, sale, and distribution of its products. Its principal corporate headquarters is located at 3M Center, Building 220-11W-02, St. Paul, Minnesota 55144, with its "principal address" being 100 West 10th Street,

Wilmington, Delaware 19894. It is the parent company of 3M Company, Inc. located in Guin, Alabama.

15.    Defendant 3M Company, Inc., (hereinafter referred to as "3M Company, Inc.") is a foreign corporation organized and existing under the laws of the State of Delaware. It has qualified to do business in the State of Alabama and is/was doing business by agent in Marion County, Alabama at all times relevant hereto. Its principal place of business is located at 6675 U.S. Highway 43, Guin, Alabama 35563. It is a wholly owned subsidiary company of Defendant 3M Company.

16.    Defendant City of Guin, Alabama, Water Works & Sewer Board (GWWSB) is a public corporation organized and existing under the laws of the State of Alabama, with its principal place of business located in Marion County, Alabama. GWWSB provides domestic water supply to its customers, and also treats wastewater through a municipal wastewater treatment permit issued through the State of Alabama. GWWSB owns and operates both a public water treatment plant and wastewater treatment facility. The water supply of GWWSB is taken from Purgatory Creek, a non-navigable stream flowing through the City of Guin, Alabama. Its principal place of business is located at 6788 U.S. Highway 43, Guin, Alabama 35563.

17.     Defendant 3M Company, Inc. also owns and operates the 3M Guin Industrial Landfill ("3M Landfill") as a subsidiary of Defendant 3M Company, Inc. The 3M Landfill is located on County Highway 83 near Twin in Marion County, Alabama, and operates under Alabama Department of Environmental Management Solid Waste Landfill Permit 47-06. The 3M Landfill has been doing business in Marion County at all times relevant hereto. It is located at 6675 U.S. Highway 43, Guin, Alabama 35563.

18.     Defendant Ben Hightower Construction Company ("Hightower Construction") is a transportation and construction company. Hightower Construction is a domestic company that has been doing business in Marion County, Alabama at all times relevant hereto. Defendant Hightower Construction transports plant waste and leachate to and from the 3M manufacturing facility and 3M landfill, and discharges PFAS into the sanitary sewer system owned and operated by Guin Water Works & Sewer Board. Its principal place of business is located at 567 County Road 83, Guin, Alabama 35563.

19.     Defendant Benjamin M. Hightower ("Hightower") is the operator of both Hightower Construction Company and Manager of the 3M Company Guin Industrial Landfill. Mr. Hightower is an individual resident of Marion County who has been doing business in Marion County, Alabama at all times relevant hereto. His principal place of business is located at 567 County Road 83, Guin, Alabama 35563.

He is sued individually and in his capacity as owner and chief operating officer of Defendant Ben Hightower Construction Company.

## **FACTUAL ALLEGATIONS**

20.     Plaintiffs reallege all of the above and foregoing paragraphs as if fully set forth herein.

21.     Defendants 3M Company and 3M Company, Inc. are the present owners and operators of manufacturing and disposal facilities in Guin, Marion County, Alabama, which are releasing PFAS and related chemicals into groundwater and surface water. Defendants 3M Company, 3M Company, Inc. and 3M Company Guin Industrial Landfill manufactured or used these and other chemicals at their facilities and disposed of hazardous and solid waste containing these chemicals in a landfill and a sludge incorporation area on their property and on adjacent property.

22.     The water provided to the ratepayers and consumers of The Board is contaminated with perfluorochemicals (PFAS) discharged by Defendant 3M Company.

23.     The human health risks caused by exposure to low levels of PFAS and related chemicals include cancer, immunotoxicity, thyroid disease, ulcerative colitis, and high cholesterol. The stable carbon-fluorine bonds that make PFAS such pervasive industrial and consumer products also result in their persistence. There is no known environmental breakdown mechanism for these chemicals. They are

readily absorbed into biota and have a tendency to accumulate with repeated exposure. PFAS cross the placenta in humans, accumulate in amniotic fluid, and have been detected in the umbilical cord blood of babies.

24. The association of exposure to these chemicals and certain cancers has been reported by the C8 Health Project, an independent Science Panel charged with reviewing the evidence linking PFOA, PFOS, and related chemicals to the risk of disease, based on health research carried out by the Science Panel in the Mid-Ohio Valley population which was exposed to these chemicals as a result of releases from an E. I. du Pont de Nemours and Company chemical plant, as well as other published scientific research. The C8 Science Panel specifically listed kidney cancer and testicular cancer, as having a "probable link" to PFOA exposure. Epidemiological studies of workers exposed to PFOA support the association between PFOA exposure and both kidney and testicular cancer and also suggest associations with prostate and ovarian cancer and non-Hodgkin's lymphoma. Rodent studies also support the link with cancer. The majority of a United States Environmental Protection Agency ("EPA") Science Advisory Board expert committee recommended in 2006 that PFOA be considered "likely to be carcinogenic to humans."

25. In addition, the C8 Science Panel has found a probable link between exposure to PFOA, PFOS, and related compounds, and the following human

diseases: pregnancy-induced hypertension, ulcerative colitis, and high cholesterol. Furthermore, in recent years, immunotoxicity of PFOA, PFOS, and related compounds, has been demonstrated in a wide variety of species and models, including humans. For instance, a study of ninety-nine Norwegian children at age three found that maternal serum PFOA concentrations were associated with decreased vaccine responses, especially toward rubella vaccine, and increased frequencies of common cold and gastroenteritis. The combined human and experimental evidence is in strong support of adverse effects on immune functions at relatively low exposure levels.

26.    The EPA in 2009 published provisional drinking water health advisories for PFOA and PFOS, which are currently under review. The advisory for PFOA is 0.4 µg/L (0.4 ppb), and for PFOS is 0.2 µg/L (0.2 ppb).

27.    The EPA 2009 health advisories are based on evidence that was available before 2008. According to more recent studies, the advisories are more than 1,000-fold too high.

28.    In 2014 EPA released a draft of its proposed "reference dose" for PFOA – an estimate of how much a person can safely consume daily over a lifetime. That proposed reference dose would translate to a legal limit in drinking water for PFOA of 0.1 ppb, which is one quarter of the 2009 advisory level.

29.    The State of New Jersey adopted a drinking water health advisory in 2006 for PFOA that is 0.04 ppb, which is 10 times lower than the EPA provisional drinking water health advisory for PFOA. In 2014 New Jersey proposed lowering this number to 0.02 ppb.

30.    Defendant 3M has long been aware of the persistence and toxicity of PFOA, PFOS, and related chemicals. Yet, it has knowingly and intentionally continued to discharge these chemicals into the Tennessee River in Guin, Alabama, 13 miles upstream of the water supplies used by Plaintiffs.

31.    Defendant 3M has known for at least 35 years that PFOA, PFOS, and related chemicals persist in the environment and accumulate in the bodies of humans, fish, and test animals. For instance, blood tests of 3M workers conducted in 1978 found elevated organic fluorine levels "proportional to the length of time that had been spent by employees in the production areas." The same study found that "laboratory workers, with former exposure, but none for 15-20 years, had elevated [organic fluorine levels] above literature normals." A 1979 3M study of fish caught at the Wheeler Dam (26 miles downstream from the 3M plant) showed that the chemicals bioaccumulate in fish under natural conditions.

32.    Defendant 3M has known for at least 35 years that PFOA, PFOS, and related chemicals are toxic. For instance, a 1979 3M study of the effects of fluorochemical compounds on Rhesus monkeys was terminated after 20 days

because all of the monkeys, at all dosage levels, died as a result of exposure to the fluorochemicals. It was not until 21 years later, in March 2000, that 3M told the public that a "new study" of the effects of these compounds on Rhesus monkeys is part of the reason 3M pulled one of its consumer products, Scotchgard, off the market. In 1983, a team of 3M toxicologists recommended broad testing regarding the effects of 3M"s fluorochemicals on the environment and human beings.

33.    Defendant 3M has known for at least 14 years that PFOA, PFOS and related chemicals are not effectively treated by conventional wastewater treatment plant processes and are discharged to surface waters in the effluent and also accumulate in the sludge from wastewater treatment processes. For example, in 2001, 3M found high concentrations of these chemicals in samples from the Guin Utilities WWTP effluent and sludge as a result of discharges from 3M Company.

34.    The United States Environmental Protection Agency ("EPA") took regulatory action on March 11, 2002 and December 9, 2002, by publishing two significant new use rules (SNURs) under the Toxic Substances Control Act (TSCA) to limit future manufacture of PFOA, PFOS, and related chemicals.

35.    EPA and the Alabama Department of Environmental Management have identified Defendants' facilities as sources of PFOA and PFOS contamination in the Purgatory Creek in and around Guin, Alabama, including surface water, porewater,

sediments, and fish. The primary source is the 3M facility, with high levels of PFOA and PFOS in groundwater migrating into the Purgatory Creek.

36. GWWSB's source for the water it supplies to its customers is the Purgatory Creek, a non-navigable stream flowing through the City of Guin, Alabama. Representative Plaintiffs and Members of the proposed Class receive their domestic water supplies from GWWSB and other water utilities.

37. As a result of their exposure to PFAS and other toxic chemicals in the water provided by GWWSB, Plaintiffs have suffered illnesses and other health problems, including but not limited to, irritation of the eyes, nose, mouth, and throat; skin rash and burning of the skin; some have developed asthma and other diseases, and some have been diagnosed with cancer.

38. As a direct and proximate result of Defendants' discharges into the Purgatory Creek from their manufacturing facilities and waste disposal operations upstream from the water intake for GWWSB, the water supplied by GWWSB to Representative Plaintiffs and other Members of the proposed Class was and is contaminated with PFAS, and related chemicals.

39. Despite access to confidential studies and first-hand experience with the hazards of PFAS, 3M Company assured GWWSB the documented levels of pollution posed no threat to the Plaintiffs. Contrary to the representations by 3M Company to GWWSB, 3M Company knew the levels for safe drinking water

standards were inadequate to protect the Plaintiffs and that under new proposed standards, the PFAS levels in GWWSB water supply were dangerously high.

40. The Representative Plaintiffs and other Members of the proposed Class have had exposure to PFAS as a result of consuming water contaminated by Defendants' chemicals.

41. As a result of their ongoing exposure to drinking water containing harmful levels of PFAS and related chemicals from Defendants' manufacturing processes, Representative Plaintiffs and Members of the proposed Class have been damaged and placed at risk of immediate harm.

42. The Representative Plaintiffs and Members of the proposed Class have suffered from burns, irritation of the skin and eyes. Some members of the putative Class have been diagnosed with cancer.

## CLASS ACTION ALLEGATIONS

43. Plaintiffs reallege all of the above and foregoing paragraphs as if fully set forth herein.

44. This action on behalf of Representative Plaintiffs and all others similarly situated has been brought and may be properly maintained pursuant to the provisions of Rule 23 of The Federal Rules of Civil Procedure.

45.     Representative Plaintiffs and Members of the proposed Class are residents of The State of Alabama whose property interests and health interests have been damaged through contamination of their drinking water.

46.     The Class proposed by the Representative Plaintiffs and those they seek to represent is as follows:

**all owners and possessors of property, and other consumers, who use water provided by The Guin Water Works and Sewer Board.**

47.     Excluded from the Class are:

(a)     Defendants and any entities in which Defendants have a controlling interest;

(b)     Any of the legal representatives, heirs, successors, or assigns of Defendants;

(c)     The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

(d)     All persons or entities that properly execute and timely file a request for exclusion from the Class; and

(e)     Any attorneys representing the Representative Plaintiffs or Members of the proposed Class.

48.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

49. Numerosity: The Members of the Class are so numerous that separate joinder of each Member is impractical, within the meaning of Rule 23(a)(1).

Although the exact number of Class Members will be better established after Class notification, upon information and belief, the number of Members in the Class probably exceeds 2,000 people. Putative Class Members are readily identifiable through records of GWWSB and through property records, and may be given any required notices by regular mail, supplemented, if necessary, as may be required by the Court, and by published notice.

50.     Common Questions of Law and Fact: There are numerous questions of law and fact common to the Class, as required by Rule 23(a)(2), including:

(a)     The factual history of the use, development, and distribution of PFAS and related chemicals manufactured and used by the Defendants at their Guin, Alabama, facilities;

(b)     When the Defendants knew of the harmful effects of PFAS and related chemicals;

(c)     Whether the Defendants failed to disclose the harmful effects of PFAS and related chemicals being released from their plants in Guin, Alabama;

(d)     The extent of the contamination at the Defendants' plant sites in Guin, Alabama, and the migration of that contamination into the Purgatory Creek;

(e)     Whether the water supplied to Representative Plaintiffs and
        Class Members has been contaminated with PFAS and related
        chemicals;

(f)     Whether Defendants invaded Representative Plaintiffs' and
        Class Members' property with knowledge of the violation of the
        rights in their property, and whether Defendants' intentional
        misconduct constitutes a continuing trespass;

(g)     Whether the Defendants' misconduct constitutes a nuisance;

(h)     The necessary remedial actions to prevent Defendants'
        chemicals from contaminating Representative Plaintiffs' and
        Class Members' water supplies; and

(i)     The appropriateness of injunctive relief to prevent Defendants'
        chemicals from entering Representative Plaintiffs' and Class
        Members' water supplies.

51.     The questions of law and fact common to Members of the Class
predominate over any questions affecting only individual Members, and thus a Class
Action is superior to other available methods for the fair and efficient adjudication
of the controversy.

52.     Typicality: The claims of the Representative Plaintiffs are typical of the
claims to be advanced by Members of the Class, and their claims encompass those

of the other Class Members they seek to represent, as required by Rule 23(a)(3). The claims are typical because the facts and circumstances giving rise to liability are the same, the claims are based on the same legal theories, and the damages suffered by the Representative Plaintiffs are the same kinds of damages suffered by the Members of the Class.

53.     Adequacy of Representation: The Representative Plaintiffs can fairly and adequately protect and represent the interests of each Member of the Class as required by Rule 23(a)(4). The Representative Plaintiffs will fairly and adequately protect and represent the interests of the Members of the Class based on the following facts and circumstances: their interests do not conflict; their interests are co-extensive with common rights of recovery based on the same essential facts and legal theories; they are Members of the same communities; they are similarly damaged and are seeking the same remedies; and they intend to prosecute this action vigorously. Plaintiffs have retained counsel competent and experienced in complex litigation.

54.     The prosecution of separate actions by individual Members of the Class would create a risk of (a) inconsistent or varying adjudications with respect to individual Members of the Class, which would establish incompatible standards of conduct for the Defendants and/or (b) adjudications with respect to individual Members of the Class which would, as a practical matter, be dispositive of the

Members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

55.   The Defendants have acted on grounds generally applicable to all Members of the proposed Class, making final declaratory and injunctive relief concerning the Class as a whole appropriate within the meaning of Rule 23(b)(2).

56.   Common questions of fact and law between the Representative Plaintiffs and Members of the Class predominate over questions affecting only individual Class Members, within the meaning of Rule 23(b)(3). Some of the common issues are set forth in Paragraph 47 above.

57.   Additionally, Class action treatment is a superior method to other available methods for the fair and efficient adjudication of the controversy. Certification under Rule 23(b)(3) would be proper in that, among other things, there is no interest by Members of the Class in individually controlling the prosecution of separate actions, the expense of prosecuting individual claims for the matters for which Class certification is sought would be prohibitive in light of the typical claimant's injuries, neither the Plaintiffs nor Members of the proposed Class have filed or are parties to any litigation in which the legal and factual issues raised herein are to be adjudicated, and it is desirable to concentrate the litigation of claims in a single proceeding so as to avoid unnecessary and expensive duplication of actions

and to provide for judicial economy. Whatever difficulties may exist in the management of a Class action will be greatly outweighed by its benefits.

58.    Class action treatment is preferable to other available methods in providing a fair and efficient method for the adjudication of the controversy described herein, which has affected a large number of persons. The Class action provides an effective method whereby the enforcement of the rights of the Plaintiffs can be fairly managed without unnecessary expense or duplication.

## **COUNT ONE**

**42 U.S.C. § 1983 – INVERSE CONDEMNATION/VIOLATION OF TAKINGS CLAUSE OF THE FIFTH AMENDMENT - Against Defendant Guin Water Works and Sewer Board**

59.    Plaintiffs reallege all of the above and foregoing paragraphs as if fully set forth herein. This count is brought against Defendant Guin Water Works and Sewer Board (GWWSB).

60.    The Fifth Amendment to The United States Constitution states in relevant part that "No person shall…be deprived of life, liberty, or property, without due process of law; nor shall private property be taken…without just compensation."

61.    Plaintiffs allege and aver that their water supply has been contaminated and continues to be contaminated with toxic chemicals by Defendant GWWSB.

62.   The contaminants found in Plaintiffs' water supply include, but not limited to, perfluorochemicals (or PFAS) as well as other toxic chemicals which are dangerous to both person and property.

63.   The human health risks caused by exposure to low levels of PFAS and related chemicals include cancer, immunotoxicity, thyroid disease, ulcerative colitis, and high cholesterol. The stable carbon-fluorine bonds that make PFAS such pervasive industrial and consumer products also result in the formation of these chemicals. There is no known environmental breakdown mechanism to these chemicals. They are readily absorbed into biota and have a tendency to accumulate with repeated exposure. PFAS cross the placenta in humans, accumulate in amniotic fluid, and have been detected in the umbilical cord blood of babies.

64. The association of exposure to these chemicals and certain cancers has been reported by the C8 Health Project, an independent Science Panel charged with reviewing the evidence linking PFOA, PFOS, and related chemicals to the risk of disease, including non-Hodgkin's lymphoma and prostrate and ovarian cancer.

65.   Plaintiffs allege that the sale and distribution of water by GWWSB has substantially interfered with their rights to use and enjoy their property, and otherwise deprived them of their possessory interests in their properties. The said water has caused damage and injury to person and property, and Plaintiffs' dwelling houses have become virtually uninhabitable.

66.     Plaintiffs allege and aver that the sale and distribution of water by GWWSB, which contains PFAS and other toxic chemicals, and is delivered to Plaintiffs' lands, prohibits them from enjoying the use of their property, and rises to the level of a "taking" without due process of law and without just compensation, within the meaning of the Fifth Amendment.

67.     At all times pertinent hereto, Defendant GWWSB acted under color of state law.

68.     The above-described acts and omissions of Defendant GWWSB violate the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983.

69.     As a proximate cause of the taking of their properties, Plaintiffs have suffered the following injuries and damages:

(i)     they have suffered physical harm and injuries from then until now, and they shall continue to suffer in the future;

(ii)    they have suffered pain and suffering from then until now, and they shall continue to suffer in the future;

(iii)   they have suffered mental anguish and emotional distress from then until now, and they shall continue to suffer in the future;

(iv)    they have suffered significant health problems from then until now, and they shall continue to suffer in the future, including but not limited to irritation of the eyes, burning of the skin, skin rashes, and some plaintiffs have been diagnosed with cancer; and

(v)     they have incurred medical costs and expenses from then until now, and they shall continue to incur such costs and expenses in the future.

## PRAYER FOR RELIEF FOR VIOLATION OF
## FEDERALLY PROTECTED RIGHTS

(a)     Plaintiffs seek all compensatory, consequential, and incidental damages recoverable at law, in such amounts to be determined by a struck jury, such amounts in excess of the jurisdictional minimum of this Court, plus interest and costs;

(b)     Plaintiffs seek all punitive damages recoverable at law, in such amounts to be determined by a struck jury, to sufficiently punish the Defendant Guin Water Works and Sewer Board for its malicious, wicked, willful and wanton conduct, and to deter such similar misconduct in the future, such amounts in excess of the jurisdictional minimum of this Court, plus interest and costs; and

(c)     Plaintiffs also pray for such further, other, and different relief to which they may be entitled, whether legal or equitable, including an award of their attorney fees pursuant to 42 U.S.C. § 1988, plus their litigation costs and expenses.

## COUNT TWO

### NEGLIGENCE/WANTONNESS – Against Defendants 3M Company, Inc., 3M Company Guin Industrial Landfill, Hightower Construction Company, and Benjamin H. Hightower

70.     Plaintiffs reallege all of the above and foregoing paragraphs as if fully set forth herein.

71.     This count is brought under the supplemental jurisdiction of the Court against Defendants 3M Company, 3M Company, Inc., 3M Company Guin Industrial Landfill, Hightower Construction Company, and Benjamin H. Hightower.

72.     Plaintiffs allege that the said Defendants owed a legal duty to Plaintiffs to exercise due and reasonable care in disposal of its materials, to prevent the release,

discharge, and escape of toxic chemicals, including PFAS and related chemicals, into the Plaintiffs' water supply.

73.     Through the escape and release of leachate that should be contained on-site at the 3M Guin Landfill, through the release of PFAS from the Defendants' Guin manufacturing facility, and by way of the discharge of the PFAS into the sanitary sewer system, the Defendants have polluted and contaminated the Plaintiffs' water supply, thereby breaching their legal duty described above.

74.     The United States National Toxicology Program has identified PFOS and PFOA as being toxic to humans' immune system. The International Agency for Research on Cancer has identified PFOA as a carcinogen.

75.     The Federal Agency for Toxic Substances and Disease Registry has established a "lifetime exposure limit" for human exposure and consumption of PFOS and PFOA, and recently released a statement the lifetime standard should be lowered to protect public health. Exposure to PFAS is associated with the development of multiple health problems, including thyroid disease, cancer and weakened immunity to fight various illnesses.

76.     The Defendants had and continue to have actual knowledge that leachate collected at their landfill is heavily saturated with PFAS at concentrations the pose a serious threat to the health and safety of human beings and to the environment, and especially where leachate is released into the public water supply.

77.     Defendants owed a duty to Plaintiffs to exercise due and reasonable care in their manufacturing and chemical supple operations, to prevent the discharge of toxic chemicals, including but not limited to PFAS and related chemicals, into the Plaintiffs' water supply.

78.     The Defendants breached the duty owed to Plaintiffs, and under the circumstances, Defendants' breaches of duty constitute negligent, willful and/or reckless and wanton conduct. Plaintiffs demand punitive damages due to the willful, wanton, and malicious nature of the defendants' conduct.

79.     As a direct, proximate and foreseeable result of the named Defendants' conduct, practices, actions, and inactions, Plaintiffs have suffered the following injuries and damages:

   (i)     they have suffered physical harm and injuries from then until now, and they shall continue to suffer in the future;

  (ii)     they have suffered pain and suffering from then until now, and they shall continue to suffer in the future;

 (iii)     they have suffered mental anguish and emotional distress from then until now, and they shall continue to suffer in the future;

(iv)     they have suffered significant health problems from then until now, and they shall continue to suffer in the future, including but not limited to

irritation of the eyes, burning of the skin, skin rashes, and some plaintiffs have been diagnosed with cancer; and

(v)     they have incurred medical costs and expenses from then until now, and they shall continue to incur such costs and expenses in the future.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against the said Defendants, jointly and severally, for all compensatory, consequential, incidental, and punitive damages recoverable at law, in such amounts to be determined by a struck jury, such amounts in excess of the jurisdictional minimum of this Court, plus interest and costs.

## COUNT THREE
## NEGLIGENCE/WANTONNESS –
### Against Guin Water Works and Sewer Board

80.     Plaintiffs reallege all of the above and foregoing paragraphs as if fully set forth herein.

81.     This count is brought under the supplemental jurisdiction of the Court against Guin Water Works and Sewer Board (GWWSB).

82.     Plaintiffs allege that Defendant GWWSB owed a legal duty to Plaintiffs to exercise due and reasonable care in the sale and distribution of its water, to prevent the release, discharge, and escape of toxic chemicals, including PFAS and related chemicals, into the Plaintiffs' water supply.

83.     Through the escape and release of leachate that should have been contained on-site at the 3M Guin Landfill, through the release of PFAS from the Defendants' Guin manufacturing facility, and by way of the discharge of the PFAS into the sanitary sewer system, the Defendants have polluted the Plaintiffs' water supply and thereby breached their legal duty described above.

84.     The United States National Toxicology Program has identified PFOS and PFOA as being toxic to humans' immune system. The International Agency for Research on Cancer has identified PFOA as a carcinogen.

85.     The Federal Agency for Toxic Substances and Disease Registry has established a "lifetime exposure limit" for human exposure and consumption of PFOS and PFOA, and recently released a statement the lifetime standard should be lowered to protect public health. Exposure to PFAS is associated with the development of multiple health problems, including thyroid disease, cancer and weakened immunity to fight various illnesses.

86.     Defendant GWWSB had and continue to have actual knowledge that the water which it sells and distributes is heavily saturated with PFAS at concentrations that pose a serious threat to the health and safety of human beings and to the environment.

87.     Defendant GWWSB owed a legal duty to Plaintiffs to exercise due and reasonable care in sale and distribution of water, to prevent the discharge of toxic

chemicals, including but not limited to PFAS and related chemicals, into the Plaintiffs' water supply.

88.     Defendant GWWSB breached the duty owed to Plaintiffs, and under the circumstances, Defendant GWWSB's breaches of duty constitute negligent, willful and/or reckless conduct. Plaintiffs demand punitive damages due to the willful, wanton, and malicious nature of the defendants' conduct.

89.     As a direct, proximate and foreseeable result of Defendants GWWSB's conduct, practices, actions, and inactions, Plaintiffs have suffered the following injuries and damages:

(i)     they have suffered physical harm and injuries from then until now, and they shall continue to suffer in the future;

(ii)    they have suffered pain and suffering from then until now, and they shall continue to suffer in the future;

(iii)   they have suffered mental anguish and emotional distress from then until now, and they shall continue to suffer in the future;

(iv)    they have suffered significant health problems from then until now, and they shall continue to suffer in the future, including but not limited to irritation of the eyes, burning of the skin, skin rashes, and some plaintiffs have been diagnosed with cancer;

(v)     they have incurred medical costs and expenses from then until now, and they shall continue to suffer in the future; and

(vi)    demand punitive damages due to the willful, wanton, and malicious nature of the Defendant's conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against Defendant GWWSB, jointly and severally, for all compensatory, consequential, incidental, and punitive damages recoverable at law, in such amounts to be determined by a struck jury, such amounts in excess of the jurisdictional minimum of this Court, plus interest and costs.

## COUNT FOUR
### NUISANCE – Against All Defendants

90.     Plaintiffs reallege all of the above and foregoing paragraphs as if fully set forth herein.

91.     This count is brought under the supplemental jurisdiction of the Court against All Defendants.

92.     Plaintiffs allege and aver that they own or have a possessory interest in certain parcels of property situated in Marion County, Alabama.

93.     Plaintiffs have the lawful right to use and enjoy their property, including local waters and water supply.

94.     The Defendants have, separately and severally, conducted activities at the 3M plant and landfill, and at the Guin Water Works and Sewer Board, that have interfered with the Plaintiffs' rights to use and enjoy their properties, thereby creating a nuisance. The Defendants' activities have caused harm, damages, and inconvenience to the Plaintiffs as they would to any reasonable, ordinary person. The Defendants' activities and damage to property include the release of PFAS into Plaintiffs' water supply, thereby contaminating the water with toxic chemicals.

95.     The Defendants have contaminated the Plaintiffs' water supply and otherwise materially interfered with Plaintiffs' property rights, and thereby caused the Plaintiffs to lose the use of their resources. The Defendants' actions have caused harm to the Plaintiffs' properties and harm to the health of Plaintiffs themselves, and have rendered Plaintiffs' dwelling houses virtually uninhabitable. The Defendants' actions have caused a legal nuisance resulting in damages to Plaintiffs that includes contamination of plaintiff's water supply. In addition thereto:

   (i)    they have suffered physical harm and injuries from then until now, and they shall continue to suffer in the future;

   (ii)    they have suffered pain and suffering from then until now, and they shall continue to suffer in the future;

   (iii)    they have suffered mental anguish and emotional distress from then until now, and they shall continue to suffer in the future;

    (iv)     they have suffered significant health problems from then until now, and they shall continue to suffer in the future, including but not limited to irritation of the eyes, burning of the skin, skin rashes, and some plaintiffs have been diagnosed with cancer; and

    (v)     they have incurred medical costs and expenses from then until now, and they shall continue to incur such costs and expenses in the future.

96.     It was reasonably foreseeable, and in fact known to the Defendants, that their actions would contaminate, and have contaminated, the water supply of the Plaintiffs. The nuisance has caused has caused substantial damages to both person and property, and shall continue to cause damages until it is satisfactorily abated.

97.     Plaintiffs demand punitive damages due to the willful, wanton, and malicious nature of Defendants' conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against the said Defendants, jointly and severally, for all compensatory, consequential, incidental, and punitive damages recoverable at law, in such amounts to be determined by a struck jury, in amounts in excess of the jurisdictional minimum of this Court, plus interest and costs.

## COUNT FIVE

## TRESPASS – Against All Defendants

98.    Plaintiffs reallege all of the above and foregoing paragraphs as if fully set forth herein.

99.    This count is brought under the supplemental jurisdiction of the Court against all Defendants.

100.    Plaintiffs allege and aver that they own or have a possessory interest in certain parcels of property situated in Marion County, Alabama.

101.    Plaintiffs have the lawful right to use and enjoy their property, including local waters and water supply.

102.    The Defendants have, separately and severally, conducted activities at the 3M plant and landfill and at the Guin Water Works and Sewer Board which have interfered with the Plaintiffs' right to use and enjoy their properties, thereby resulting in trespass. The Defendants' activities have caused harm and inconvenience to the Plaintiffs as they would to any reasonable, ordinary person. The Defendants' activities and damage to persons and property include the intentional and/or negligent release of PFAS onto Plaintiffs' property and Plaintiffs' water supply.

103.    The Defendants have contaminated the Plaintiffs' water supply and otherwise materially interfered with Plaintiffs' property rights and thereby caused the Plaintiffs to lose the use of their resources. The Defendants' actions have caused

physical harm to the Plaintiffs' properties, harm to the Plaintiffs themselves, and have rendered Plaintiffs' dwelling houses virtually uninhabitable. The Defendants' actions have caused a legal nuisance resulting in damages to Plaintiffs that includes contamination of Plaintiffs' water supply and other injuries and damages.

104.   It was reasonably foreseeable, and in fact known to said Defendants, that their actions would contaminate, and have contaminated, the water supply of the Plaintiffs. The Defendants' trespasses have caused substantial damages to both person and property, and shall continue to cause damages until they are satisfactorily abated.

105.   Plaintiffs demand punitive damages due to the willful, wanton, and malicious nature of Defendants' conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against the said Defendants, jointly and severally, for all compensatory, consequential, incidental, and punitive damages recoverable at law, in such amounts to be determined by a struck jury, in amounts in excess of the jurisdictional minimum of this Court, plus interest and costs.

Filed this the 4th day of March, 2022.

/s/ Anthony Ifediba
Anthony C. Ifediba (ASB-5751T701)
Ifediba Law Group, P.C.
1220 16th Street South,
Birmingham, Alabama 35205
P: (205) 933-1515

34

F: (205) 933-1515
aifediba@ifedibalaw.com


/s/ John Benochi
_____
John Benochi (ASB-1189I88R)
Ifediba Law Group, P.C.
1220 16th Street South,
Birmingham, Alabama 35205
P: (205) 933-1515
F: (205) 933-1515
jbenochi@ifedibalaw.com


## JURY TRIAL DEMAND

Plaintiffs hereby demand trial by struck jury as to all counts triable.

/s/ Anthony Ifediba
_____
OF COUNSEL


## SERVE DEFENDANTS BY CERTIFIED MAIL; RETURNED RECEIPT REQUESTED:

3M Company
c/o CT Corporation System
as registered agent for service of process
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

3M Company, Inc.
c/o Corporation Service Company
as registered agent for service of process
641 South Lawrence Street
Montgomery, Alabama 36104

City of Guin Water and Sewer Board
6788 U.S. Highway 43
Guin, AL 35563

3M Company Guin Industrial Landfill
6675 U.S. Highway 43
Guin, AL 35563

Ben Hightower Construction Company
c/o Benjamin M. Hightower
567 County Rd 83
Guin, AL 35563

Benjamin M. Hightower
567 County Rd 83
Guin, AL 35563